1

2

3

4

5

6

7

8

9      UNITED STATES DISTRICT COURT

10     EASTERN DISTRICT OF CALIFORNIA

11

12       ----oo0oo----

13 CARA WONG,
          NO. CIV. S-08-0042 FCD DAD
14    Plaintiff,

15  v.       <u>MEMORANDUM AND ORDER</u>

16 PAPE MACHINERY, INC.,

17    Defendant.

18       ----oo0oo----

19  This matter is before the court on defendant Pape Machinery,

20 Inc.'s ("Pape Machinery") motion for summary judgment or, in the

21 alternative, summary adjudication.  Plaintiff Cara Wong ("Wong")

22 opposes the motion.  For the reasons set forth below,[1]

23 defendant's motion for summary judgment is GRANTED.

24

25

26

27

28
   [1] Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. Local Rule 78-230(h).

**BACKGROUND**[2]

Defendant Pape Machinery sells, leases, and services construction equipment. (UF ¶ 2.) Because most of the customers at the Sacramento location do residential and light construction, its business is dependent on new construction. (UF ¶ 2.) Pape Machinery purchased the Sacramento location at the end of February 2005. (UF ¶ 4.) The gross revenue for Pape Machinery's Sacramento location from March through December of 2005 was $35,361,126. (UF ¶ 4.) In 2006, the gross revenue was $34,813,421. (UF ¶ 5.) The total sales in the Service Department was $2,949,514. (UF ¶ 7.) However, in 2007, the gross revenue dropped to $20,291,231. (UF ¶ 6.) The total sales for the Service Department also dropped to $2,272,872. (UF ¶ 8.)

Plaintiff Wong began working as a Service Administrator at Pape Machinery's Sacramento location in February 2005. (UF ¶ 1.) The Service Administrator position was an administrative support position for the Service Department. (UF ¶ 11.) The duties of that position included opening and closing service invoices, time-card billing entry, and filing. (UF ¶ 11.)

Wong suffered a back injury in or around November 2005, which required her to take numerous days off for treatment and recovery throughout the 2006 and 2007 work years. (UF ¶ 44.)

_____

[2] Unless otherwise noted, the facts herein are undisputed. Where the facts are in dispute, the court cites either plaintiffs' version of facts. (See Defs.' Resp. to Pl.'s Sep. Stmt. of Undisp. Facts ("UF") [Docket #20], filed Mar. 20, 2009).

Defendant filed objections to various pieces of plaintiff's evidence. Except where otherwise noted, such evidence is immaterial to the court's analysis of defendant's motion or the objections are without merit.

Such treatment included, among other things, several epidurals and one facet block procedure. (UF ¶ 45.) On June 11, 2007, Wong went out on a leave of absence from work. (UF ¶ 3.) She returned to work a half day on June 15, 2007, and subsequently was out on a leave of absence until her position was eliminated. (UF ¶ 3.)

Pape Machinery never interfered with Wong's ability to get benefits or to take time off for her alleged disabilities. (UF ¶ 23.) It allowed her to work within her doctor's work restrictions and gave her time off as needed for her alleged disabilities. (UF ¶ 24.)

The only comment anyone at Pape Machinery ever made to Wong about her alleged disabilities was when Dillon Green, a co-worker, commented that it must be nice having a month off from work after she returned from her leave in 2005. (UF ¶ 17.) In a performance evaluation, dated November 6, 2006, Wong received a score indicating that she needed improvement in attendance and punctuality. (Ex. H to Decl. of Cara Wong ("Wong Decl."), file Mar. 9, 2009.) The comments in this category noted, "Cara misses an excessive amount of time from work, (sic) the majority of absences are approved by the Supervisors in the Service Dept. However, the poor performance in attendance creates delays and an unsatisfactory performance in many other areas of the Service Dept's daily operations." (Id.) Michael Miller ("Miller"), plaintiff's former supervisor, testified at his deposition that reliability was an "on-going issue" with Wong; specifically, he testified that "[i]t wasn't the leave, it was . . . [b]eing late, the carpooling, the children sick, her sick, her own internal

3

issues." (Dep. of Michael Miller, Ex. I to Decl. of Robert A. Carichoff ("Carichoff Decl."), filed Mar. 9, 2009, at 45:5-22.) Further, on a fax cover sheet for a work excuse form from plaintiff, dated August 13, 2007, defendant's former Human Resources Coordinator, Jennifer Van Zante ("Van Zante") wrote, "Here's the latest and greatest on Cara Wong." (Ex. K to Carichoff Decl.)

Wong was terminated on November 2, 2007. (UF ¶ 13.) She was not able to work from the time she took her leave of absence in June 2007 up until at least May 27, 2008. (UF ¶ 21.) Wong began seeking employment beginning in or around June 2008. (UF ¶ 34.) She has applied for approximately forty different jobs between June 2008 and February 2009, but has not been called for any interviews. (UF ¶¶ 35-36.) Plaintiff presents evidence that she was deemed ineligible for rehire with defendant. (UF ¶ 37.) Defendant asserts that it never informed plaintiff that she was ineligible for rehire and that she has always be eligible for rehire. (UF ¶ 47.) Plaintiff continues to seek employment. (UF ¶ 36.)

Between May 2007 and June 2008, twenty of the fifty-four employees at the Sacramento location, including Wong, were laid off, left voluntarily, or retired; these employees were not replaced. (UF ¶ 14.) Defendant contends that when business declined in 2007, there were fewer invoices and timecards to process and fewer filing duties. (UF ¶ 12.) Defendant asserts that because of this decline in work, the Service Administrator position that Wong held was no longer needed. (UF ¶ 12.) The Service Administrator position was never filled while she was on

4

her leave of absence, and there is currently no Service Administrator position at the Sacramento location. (UF ¶ 15.)[3] Rather, Wong's former job duties have been distributed among several different employees in different departments. (UF ¶ 16.) Plaintiff contends that she was terminated due to her disability and related leave. (UF ¶ 12.)

Plaintiff also contends that she did not timely receive her final paycheck. Pape Machinery sent Wong's final check, postmarked on November 1, 2007, to her home address via certified mail. (UF ¶ 25.) Wong asserts that the check was not actually delivered to her until one week later, on November 8, 2007. (UF ¶ 25.) She deposited this check on November 13, 2007. (UF ¶ 28.)

Plaintiff filed a complaint in the Superior Court of California for the County of Sacramento, alleging (1) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 et seq.; (2) wrongful termination in violation of public policy; and (3) failure to pay her final paycheck on the date of her termination in violation of the California Labor Code. Defendant removed the litigation to this court on January 7, 2008.

### STANDARD

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

---

[3] Plaintiff disputes these facts to the extent they imply the absence of discrimination. However, plaintiff's proffered evidence does not raise a triable issue regarding the facts as set forth by defendant.

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-289 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Id. at 251-52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 289. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).

On a motion for summary judgment, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87, 106 S. Ct. at 1356.

**ANALYSIS**

## I.   Disability Discrimination in Violation of FEHA

Plaintiff alleges that she suffers from several disabilities, including vertigo and a herniated lumbar disc.  She contends that she was terminated because of her disabilities and related medical leaves.

In evaluating disability discrimination claims under FEHA, California courts have adopted the three-step burden-shifting test established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4]  See Yanowitz v. L'Oreal USA, Inc. 36 Cal. 4th 1028, 1042 (2005).  Thereunder, plaintiff must first establish a prima facie case of discrimination.  In doing so, plaintiff may produce indirect evidence that gives rise to an inference of discriminatory motive.  See Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).  Ultimately, plaintiff must show that he (1) suffered from a disability or was regarded as disabled; (2) was otherwise qualified to do the job; and (3) suffered an adverse employment action because of [his] disability.  Diaz v. Federal Express Corp., 373 F. Supp. 2d 1034 (C.D. Cal. 2005).

Once plaintiff makes this initial showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  See EEOC v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989).  The ultimate burden

---

[4]      Due to the similarity between federal and state discrimination laws, California courts follow federal precedent in applying FEHA.  Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 354 (2000).

8

of persuasion, however, remains with the plaintiff. <u>Texas Dep't.</u>
<u>of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

If the employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must demonstrate that the reason is a pretext for discrimination. The plaintiff may demonstrate pretext in one of two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." <u>Chuang v. Univ. of Calif. Davis, Board of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir. 2000). The factual inquiry regarding pretext requires a new level of specificity. <u>Burdine</u>, 450 U.S. at 255. Plaintiff must produce *specific* and *substantial* evidence that the defendant's reasons are really a pretext for discrimination. <u>Aragon v. Republic Silver State Disposal, Inc.</u>, 292 F.3d 654, 661 (9th Cir. 2002).

## A. Prima Facie Case

### 1. Qualified Employee

Defendant asserts that plaintiff's claim for disability discrimination must fail because she cannot establish the second element of a prima facie case,[5] that she was capable of performing her job functions with or without an accommodation. Specifically, defendant contends that because plaintiff was not cleared to work until approximately June 2008, she cannot show that she was a qualified individual.

---

[5] Defendant does not argue that plaintiff fails to satisfy the first element of a prima facie case.

9

Under FEHA, it is unlawful to make employment decisions on
the basis of a physical or mental disability if the disability
does not prevent the employee from performing the essential
duties of the job. <u>Green v. State</u>, 42 Cal. 4th 254, 262 (2007).
"Therefore, in order to establish that a defendant employer has
discriminated on the basis of disability in violation of [] FEHA,
the plaintiff bears the burden of proving he or she was able to
do the job, with or without reasonable accommodation." <u>Id.</u>

"Holding a job open for a disabled employee who needs time
to recuperate or heal is in itself a form of reasonable
accommodation and may be all that is required where it appears
likely that the employee will be able to return to an existing
position at some time in the foreseeable future." <u>Jensen v.
Wells Fargo Bank</u>, 85 Cal. App. 4th 245, 263 (2000); <u>Hansen v.
Lucky Stores, Inc.</u>, 74 Cal. App. 4th 215, 226 (1999) (holding
that "a finite leave can be a reasonable accommodation under
FEHA, provided it is likely at the end of the leave, the employee
would be able to perform his or her duties"). However, an
employer is not required "to wait indefinitely for an employee's
medical condition to be corrected." <u>Hansen</u>, 74 Cal. App. 4th at
226-27 (quoting <u>Gantt v. Wilson Sporting Goods Co.</u>, 143 F.3d
1042, 1047 (6th Cir. 1998)).

In this case, it is undisputed that plaintiff was on a leave
of absence due to her disability beginning on June 15, 2007.
There is no evidence that plaintiff's doctor had cleared her to
work at the time her position was eliminated. Moreover, as of
May 27, 2008, plaintiff had still not been released for work, and
she did not know when her doctor would release her to work.

10

However, plaintiff presents evidence that she began looking for work approximately one year after she took her medical leave. As such, the medical leave was finite. It is unclear whether, at the time plaintiff took leave or at the time of her termination, either plaintiff or defendant knew if plaintiff would be able to return to work and perform her duties within a finite period of time. However, on the record before it, the court cannot find that plaintiff was not a qualified individual as a matter of law.

## 2. Adverse Employment Action

Defendant also asserts that plaintiff's claim for disability discrimination must fail because she cannot establish the third element of a prima facie case, that she suffered an adverse employment action because of her disability. While it is undisputed that plaintiff was terminated, defendant contends that plaintiff cannot demonstrate that the termination was *because of* her disability.

The Ninth Circuit has noted that the "requisite degree of proof necessary to establish a prima facie case" in the first step of the McDonnell Douglas Corp. summary judgment analysis is "*minimal* and does not even need to rise to the level of preponderance of the evidence." Aragon, 292 F.3d at 659 (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)) (emphasis in original). "The amount [of evidence] that must be produced in order to create a prima facie case is very little." Sischo-Nownejad v. Merced Cmty. College Dist., 934 F.2d 1104, 1110-11 (9th Cir. 1991), *overruled on other grounds*.

In support of her claim, plaintiff points to her 2006 performance evaluation, which referenced an "excessive amount of

11

time" missed from work.  Plaintiff also points to an e-mail sent between defendant's employees on October 30, 2007, which notes that plaintiff was not eligible for re-hire.  Plaintiff contends that this classification demonstrates that there was a discriminatory motive because "[e]mployees are not eligible for rehire only as the result of significant displeasure by the employer," which in this case, is attributable to defendant's displeasure with plaintiff's medical leaves.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n"), filed Mar. 9, 2009, at 6.) This evidence is sufficient "to clear the minimal prima facie bar."  Aragon, 292 F.3d at 660.

**B.  Legitimate, Nondiscriminatory Reason**

As plaintiff has met her initial, minimal burden of showing an inference of discriminatory motive in her disciplinary record and eventual termination, the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for plaintiff's termination.  A reduction in workforce may constitute a legitimate, non-discriminatory reason for terminating an employee.  Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1295 (9th Cir. 2001).

Defendant asserts that plaintiff was terminated because her position was eliminated due to a downturn in business. Specifically, defendant presents evidence that between 2006 and 2007, Pape Machinery's gross revenue decreased by over $14 million and that during the same time period, the Service Department sales dropped by almost $700,000.  Defendant also presents evidence that between May 2007 and June 2008, twenty of the fifty-four employees at the Sacramento location were laid

off, left voluntary, or retired and that defendant did not hire
replacements for these positions. Furthermore, defendant
presents evidence that while Wong was out on medical leave, her
position was not filled. There is currently no one working in
her former position at the Sacramento location; rather,
plaintiff's former job duties have been distributed among other
employees. As such, defendant has set forth a legitimate,
nondiscriminatory reason for terminating Wong's employment with
Pape Machinery.

C.   **Evidence of Pretext**

Because defendant has met its burden of proving the
legitimacy of its reason for termination, in order to avert
summary judgment, plaintiff "must present specific and
substantial responsive evidence that the employer's evidence was
in fact insufficient or that there is a triable issue of fact
material to the employer's motive." <u>King v. United Parcel Serv.,
Inc.</u>, 152 Cal. App. 4th 426, 433 (2007) (citations omitted). In
other words, plaintiff must present substantial evidence that
defendant's ostensible motive was pretextual; "that is, 'that a
discriminatory reason more likely motivated the employer or that
the employer's explanation is unworthy of credence.'" <u>Id.</u>
(quoting <u>Chiaramonte v. Fashion Bed Group, Inc.</u>, 129 F.3d 391,
398 (7th Cir. 1997)).

Plaintiff first contends that defendant's evidence of
legitimate, nondiscriminatory motive is insufficient. This
contention is without merit. Defendants have presented evidence
that almost half the workforce at the Sacramento location left
employment with defendant, either voluntarily or not, and were

13

not replaced.  Defendants also present evidence that there was a significant loss in gross revenues in the company generally and in plaintiff's department specifically.  This evidence is more than sufficient to demonstrate a legitimate reduction in workforce.

Plaintiff next contends that defendant's asserted reason for termination was pretextual and untrue.  Specifically, plaintiff points to four factual issues that allegedly demonstrate the pretextual nature of defendant's conduct: (1) defendant did not achieve any wage cost savings by terminating plaintiff because she was on unpaid leave; (2) defendant attempted to omit portions of plaintiff's 2006 performance evaluation during discovery; (3) defendant made plaintiff ineligible for rehire; (4) a comment made by Jennifer Van Zante, defendant's former Human Resources Coordinator; and (5) plaintiff's job duties did not decrease from May through June 2007.  These contentions, analyzed individually and taken together, fail to raise a triable issue of pretext.

First, plaintiff's contention that defendant did not save money be eliminating her position is not supported by competent evidence and is refuted by defendant's evidence.  It is undisputed that plaintiff was on unpaid leave beginning in June 2007.  However, defendant continued to pay for her benefits while she was on leave.  (Supp. Decl. of Lee Ballard in Supp. of Def.'s Mot. for Summ. J. ("Supp. Ballard Decl."), filed Mar. 20, 2009, ¶ 7.)  For the first sixty days of her leave of absence, defendant paid the full cost of her benefits, $1,260.79 per month.  (Id.) Subsequently, plaintiff paid $133.44 per month towards the cost of her benefits, and defendant paid the remaining $1,122.35 per

14

month.  (Id.)  Plaintiff also continued to accrue her vacation

benefits while she was on leave.  (Id.)  Furthermore, defendant

would have paid the full hourly wage for plaintiff when she

returned from her leave of absence.  As such, plaintiff's

contention does not raise a factual issue of pretext.

Second, plaintiff's contention that defendant engaged in

"fraudulent discovery tactics" is both unsupported and irrelevant

to the motion.  (Opp'n at 5.)  Plaintiff contends that defendant

purposely omitted portions of her November 2006 performance

review.  However, defendant presents evidence that only a portion

of employee evaluations are sent to defendant's Human Resources

Department; it was this portion that was produced in response to

plaintiff's initial discovery request.  (Supp. Ballard Decl. ¶

6.)  When plaintiff requested the entire employee review,

defendant produced it within a 16 days.  (Supp. Decl. of Matthew

J. Ruggles in Supp. of Def.'s Mot. for Summ. J. ("Supp. Ruggles

Decl."), filed Mar. 20, 2009, ¶¶ 5-6.)  The court notes that

plaintiff never filed a motion to compel nor any other discovery

motion in this matter.  As such, plaintiff has failed to

substantiate her very serious allegations that defendant and/or

defense counsel engaged in "fraud" during the course of

discovery.  Moreover, plaintiff has failed to articulate how or

why the conduct of counsel during the course of litigation

demonstrates discriminatory animus by defendant.

Furthermore, the November 2006 performance evaluation at the

center of the discovery dispute does not demonstrate

discriminatory animus.  The performance evaluation provided that

plaintiff needed improvement in "Attendance & Punctuality" and

noted an excessive amount of absence, most of which were approved. The evaluation listed five specific absences – 6/19, 8/11, 8/26, 9/22, 10/18, (Ex. H. To Wong Decl.); plaintiff has not presented any evidence that her absences on these dates were attributable to any medical conditions or treatments.[6] Moreover, plaintiff received a pay raise in connection with this evaluation. (Ex. R to Supp. Ruggles Decl. at 23-24.) As such, the court cannot find that defendant's performance evaluation, which served as a basis for plaintiff's pay raise, is substantial evidence of pretext. See King, 152 Cal. App. 4th at 336-37 (holding that the plaintiff failed to present sufficient evidence of pretext in light of the defendant's prior conduct toward the plaintiff, despite plaintiff's deteriorating working relationship with his supervisors and the failure of plaintiff to receive a bonus).

Third, plaintiff's contention that she was not eligible for rehire is not specific or substantial evidence of pretext. As an initial matter, there is a factual dispute regarding whether plaintiff is or has ever been ineligible for rehire with defendant. Plaintiff points to a Member Status Change Form submitted internally by Miller that provides that she is

[6] To the extent plaintiff contends that the needs improvement score in "Attendance & Punctuality" resulted in the "negative evaluation," (Opp'n at 5), the court notes that plaintiff received lower scores in "Problem Solving and Initiative," "Relationships & Interpersonal Skills," "Adaptability," and "Adherence to Company Policies." (Ex. H to Wong Decl.) None of the comments in these sections reference plaintiff's absence or medical conditions. Further, Miller testified that the November 2006 evaluation was "a decent performance evaluation" for plaintiff. (Ex. R to Supp. Ruggles Decl. at 23.)

ineligible for rehire.  (Ex. J to Carichoff Decl.)  However, defendant's Director of Human Resources presents evidence that plaintiff is currently and has always been eligible for rehire with Pape Machinery.  (Supp. Ballard Decl. ¶ 8; Ex. Q to Supp. Ballard Decl.)  Further, even if defendant were ineligible for rehire, plaintiff fails to present any evidence, direct or indirect, that this classification is attributable to discriminatory animus.[7]  Rather, it is undisputed that (1) defendant never interfered with Wong's ability to get benefits or take time off related to her medical conditions; (2) defendant allowed plaintiff to work within her doctor's restrictions; and (3) no supervisor ever made a comment to her about her medical conditions or related leave.  As such, the factual issue relating to whether plaintiff was ineligible for rehire by defendant is neither specific nor substantial evidence of pretext.

Fourth, plaintiff's assertion that the comment by Van Zante on the fax cover sheet is evidence of pretext is without merit. Van Zante worked in Eugene, Oregon and assisted with defendant's workers' compensation claims.  (Supp. Ballard Decl. ¶¶ 4-5.)  She did not supervise plaintiff, nor did she have any ability to approve or deny plaintiff's leaves of absences.  (Id. ¶ 5.)  She did not participate in the elimination of the Service Administrator position or in plaintiff's termination.  (Id.)  As such, Van Zante's comment is at most a "stray . . . remark and is entitled to no weight in considering whether the firing was

_____

[7]    As previously noted, plaintiff received lower scores in four categories unrelated to her attendance in her November 2006 performance evaluation.

17

pretextual or whether the decisionmaker harbored discriminatory animus." <u>Horn v. Cushman & Wakefield Western, Inc.</u>, 72 Cal. App. 4th 798, 809 (1999) (holding that a "stray ageist remark" by the plaintiff's indirect supervisor who did not make the termination decision was insufficient evidence of pretext); <u>see</u> <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438 (9th Cir. 1990) ("[S]tray remarks are insufficient to establish discrimination.").

Further, plaintiff's assertion that Van Zante's remark is emblematic of defendant's overall attitude regarding plaintiff is unsupported. It is undisputed that only one remark was ever made to plaintiff by anyone at Pape Machinery relating to her leave; one of plaintiff's co-workers commented that it must be nice having a month off after plaintiff returned from leave in 2005. As set forth above, it is also undisputed that defendant never interfered with plaintiff's medical leaves. As such, Van Zante's remark is neither specific nor substantial evidence of pretext.

Fifth, plaintiff's contention that her workload did not decrease between May and June 2007 is insufficient evidence of pretext. Plaintiff contends that her workload did not change between May and June 2007. (Wong Decl. ¶ 6.) However, plaintiff took her leave of absence on June 11, 2007, and was not at work for most of that month. (UF ¶ 3.) She did not return to work. (<u>Id.</u>) Plaintiff's position was not eliminated until October 2007. (<u>Id.</u>) As such, she has no personal knowledge regarding the workload for her position during most of June, July, August, September, or October of 2007, when defendant presents evidence that business and the accompanying workload substantially decreased. Plaintiff also contends that she was significantly

18

busier that other people holding her position at other facilities operated by defendant. (Wong Decl. ¶ 6.) Plaintiff does not base this upon her personal knowledge or observation, but upon result monthly reports that "consistently showed the Sacramento facility . . . was among the busiest, if not the busiest." (Id.) Plaintiff does not attach these reports to her declaration. It is unclear how the business of the entire facility necessarily correlates to plaintiff's duties. However, even assuming plaintiff was "significantly busier" during May and early June 2007, this does not refute defendant's evidence that there was a decrease in business at the Sacramento location over the next year. As such, this does not raise a triable issue regarding pretext.

Finally, the court also concludes that considering all five of the issues raised by plaintiff as well as all of the evidence submitted by plaintiff in opposition to defendant's motion, plaintiff has failed to produce specific or substantial evidence that defendant's proffered legitimate, nondiscriminatory reason was pretext for an improper discriminatory motive. Therefore, defendant's motion for summary judgment regarding plaintiff's FEHA claim is GRANTED.

**II.   Reasonable Accommodation under FEHA**

   **A.   Failure to Accommodate after Elimination of Position**

While plaintiff's reasonable accommodation claim is difficult to separate from her discrimination claim, it appears that plaintiff is asserting that (1) she should have remained employed and on leave after her position was eliminated; and (2)

defendant should have transferred her to another position when she was able to work.[8]  (Opp'n at 8-10.)

Under FEHA, it is unlawful for an employer "to make reasonable accommodation for the known physical or mental disability" of an employee.  Cal. Gov't Code § 12940(k). Employers may not deny a reasonable accommodation absent a showing that such an accommodation would pose an undue hardship to the defendant.  <u>Barnett v. U.S. Air</u>, 228 F.3d 1105, 1111-14 (2000).

As set forth above, defendant has presented evidence that plaintiff was terminated for a legitimate, nondiscriminatory reason, and plaintiff has failed to present sufficient evidence of pretext to raise a triable issue of fact.  Plaintiff cites no authority to support a theory that an employer is required to accommodate an employee after she is terminated for a legitimate reason.  Nor does plaintiff cite any authority to support a theory that disabled employees are entitled to greater job protection when there is an overall reduction in force.  <u>Cf.</u> <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916-19 (9th Cir. 1996) (affirming summary judgment in favor of employer where employer presented evidence that termination was attributable to layoffs due to downturn in work and employee could not demonstrate pretext); <u>Tomlinson v. Qualcomm, Inc.</u>, 97 Cal. App. 4th 934, 939 (2002) (holding that persons on CFRA leave are not immunized from layoffs during leave).  To uphold plaintiff's

---

[8]     Plaintiff does not dispute that she was given medical leave and other reasonable accommodations for her conditions while employed with defendant.

asserted that defendant was required to retain her after her position was legitimately eliminated purely because she was disabled would give disabled employees preferred, rather than equal, status in the workplace.[9]  See Cal Gov't Code § 12920 (declaring that it is the public policy of the state of California to protect and safeguard the right and opportunity to hold employment without discrimination on account of, inter alia, physical or mental disability or medical condition and that the purpose of FEHA is to provide effective remedies that will eliminate discrimination).  The court declines to do so.  As such, because plaintiff's employment was legitimately terminated for reasons unrelated to her disability, defendant was under no duty to make reasonable accommodations leading up to or following such termination.

**B.  Failure to Engage in the Interactive Process**

In her opposition, plaintiff for the first time asserts that defendant did not engage in the interactive process to accommodate her disability.  FEHA imposes a duty on the employer "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations . . . ."  Cal. Gov't Code § 12940.  "An employer's failure to engage in this process is a separate FEHA violation."  Wilson v. County of Orange, 169 Cal. App. 4th 1185, 1193 (2009) (citing

_____

[9]     The court acknowledges that disabled employees are granted preferred status to transfer to a position as a reasonable accommodation when they can no longer perform the essential duties of their current position.  See Jensen, 85 Cal. App. 4th at 265 ("[W]hen reassignment of an existing employee is the issue, the disabled employee is entitled to preferential consideration.").  However, this is not the case presented by plaintiff's facts.

21

<u>Wysinger v. Automobile Club of Southern California</u>, 157 Cal. App. 4th 413, 424-25 (2007)).

Nowhere in plaintiff's complaint did she allege that plaintiff failed to engage in the interactive process. To the extent that facts were obtained in discovery which led to the assertion of this theory, plaintiff does not identify when such facts were obtained, nor does she contend that amendment of the complaint was requested promptly after she obtained such knowledge. Therefore, plaintiffs has failed to demonstrate "good cause" to add a claim based upon defendant's alleged failure to engage in the interactive process. Furthermore, even if such "good cause" could be demonstrated, plaintiff has failed to proffer any argument that the interests of justice require granting leave to amend the complaint at this late stage in the proceedings. <u>See</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1292 (9th Cir. 2000) (holding that the plaintiffs could not assert a new theory of recovery at the summary judgment stage because the defendant did not have sufficient notice or opportunity to defend).

However, even if the court considered the merits of plaintiff's claim for failure to engage in the interactive process, such a claim would fail. Plaintiff does not argue that defendant did not engage in the interactive process while she was an employee. Rather, plaintiff contends that defendant eliminated her position and terminated her "without any interactive process with her or without any apparent reference to possible further accommodation of her disability." (Opp'n at 9.) As set forth above, defendant did not have a duty to reasonably

accommodate plaintiff after her position was legitimately eliminated and she was terminated as part of reduction in work force. As such, defendant did not have a duty to engage in the interactive process with her regarding such an accommodation.

Accordingly, defendant's motion for summary judgment regarding plaintiff's claims for failure to accommodate and failure to engage in the interactive process is GRANTED.

**III. Wrongful Termination in Violation of Public Policy**

Plaintiff also brings a claim for wrongful termination in violation of public policy. Plaintiff relies on the allegations for this claim as she does for her FEHA claim.[10]

An employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision can give rise to a tort action. Barton v. New United Motor Manufacturing, Inc., 43 Cal. App. 4th 1200, 1205 (1996). In order to sustain a claim of wrongful termination in violation of public policy, plaintiff must prove that her dismissal violated a policy that is fundamental, beneficial for the public, and embodied in a statute or constitutional provision. Turner v. Anheuser-Busch, Inc. 7 Cal.4th 1238, 1256 (1994) (citing Gantt v. Sentry Insurance, 1 Cal.4th 1083, 1095 (1992)). Under California law, terminating an employee because of her disability is sufficient to support a claim for wrongful termination in violation of public policy. See City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1158-61 (1998).

---

[10] Plaintiff fails to address her wrongful termination claim. However, the court incorporates her arguments relating to her claim for violation of FEHA as this is the basis for her claim. (Compl. ¶¶ 18-22.)

23

As discussed above under plaintiff's FEHA claims, however, plaintiff has failed to establish that she was terminated because of her alleged disabilities. Specifically, plaintiff has failed to offer sufficient evidence to dispute defendant's legitimate, nondiscriminatory reason for her termination. Accordingly, defendant's motion for summary judgment of plaintiff's claim for wrongful termination in violation of public policy is GRANTED.

**IV. Failure to Pay Wages**

Finally, plaintiff claims that defendant intentionally failed to pay her final paycheck on the date of her termination in violation of the California Labor Code. California Labor Code § 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Section 203 further provides:

> If an employer willfully fails to pay . . . any wages of an employee who is discharged . . . , the wages for the employee shall continue as a penalty from the due date thereof at the same rate until paid or until action therefor is commenced; but the wages shall not continue for more than 30 days.

For purposes of this section, the term "willfully" means "that the employer intentionally failed or refused to perform an act *which was required to be done*." <u>Armenta v. Osmose, Inc.</u>, 135 Cal. App. 4th 314, 325 (2005) (emphasis in original) (internal quotations omitted).

The court finds that plaintiff has failed to raise a triable issue of fact regarding whether defendant willfully failed to pay plaintiff her final wages on her termination date. Plaintiff was terminated on November 2, 2007. (UF ¶ 13.) Defendant sent plaintiff her final check to her home address via certified mail.

24

(UF ¶ 25.)  The check was postmarked November 1, 2007.  (<u>Id.</u>)

Plaintiff fails to present any evidence that defendant's conduct

in sending the check on November 1, 2007 demonstrates an

intentional failure to provide prompt payment on the date of her

discharge.  Moreover, plaintiff fails to present specific

evidence regarding when she finally received the check.  (UF ¶

53.)[11]  As such, plaintiff has failed to meet her burden in

raising a triable issue that defendant willfully failed to comply

with California Labor Code §§ 201, 203.  Accordingly, defendant's

motion for summary judgment regarding plaintiff's claim to timely

pay wages is GRANTED.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary

judgment is GRANTED.  The Clerk of Court is directed to close

this file.

IT IS SO ORDERED.

DATED: April 6, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[11]     While plaintiff contends that she received the check on
November 8, 2007, the documentary evidence in support of this
assertion is not properly authenticated.  Moreover, there was a
difference between the zip code where the check was delivered and
plaintiff's zip code.  At best, this evidence is inconclusive.